# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAURA POZOS LEON**, individually and on behalf of **M.D.**, a minor,<br><br>        Plaintiffs,<br><br>    v.<br><br>**TILLAMOOK COUNTY SCHOOL DISTRICT**, et al.,<br><br>        Defendants. | Case No. 3:17-440-PK<br><br>**OPINION AND ORDER** |

Charese A. Rohny and Maria Witt, CHARESE ROHNY LAW OFFICE, LLC, 1212 SE Spokane Street, Portland, OR 97202; Isaac P. Ersoff, ANDREWS ERSOFF & ZANTELLO, 2941 NW Highway 101, Suite A, Lincoln City, OR 97367. Of Attorneys for Plaintiffs.

Barrett C. Mersereau, THE LAW OFFICE OF BRETT MERSEREAU, 2100 NE Broadway, Suite 119, Portland, OR 97232. Of Attorneys for Defendants Tillamook County School District, Northwest Regional Education Service District, Gwen Russell, Jay Marugg, and Randy Schild.

Guy E. Keating, SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, PC, 811 SW Naito Parkway, Suite 500, Portland, OR 97204. Of Attorneys for Defendant Community Action Team, Inc. of Columbia County, Oregon dba Tillamook Head Start.

**Michael H. Simon, District Judge.**

On November 3, 2017, United States Magistrate Judge Paul Papak issued his Findings

and Recommendation in this case. Judge Papak recommends that the Court grant in part

Defendants' motions to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Judge Papak recommends that the Court dismiss with prejudice Plaintiffs' claims under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the U.S. Constitution and that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice and with leave to refile in state court.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Plaintiffs object to Judge Papak's recommendation that the Court dismiss Plaintiffs'
federal claims. Accordingly, the Court has conducted a *de novo* review of these issues. For the
reasons stated below, the Court finds that not all of Plaintiffs' claims under § 1983 should be
dismissed, and thus the Court retains jurisdiction over this case. The Court also considers
Defendants' motions to dismiss Plaintiffs' state law claims, the merits of which were not
addressed in the Findings and Recommendation based on the recommendation to decline
supplemental jurisdiction after the dismissal of all federal claims.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no
cognizable legal theory to support the claim or when the complaint lacks sufficient factual
allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,
Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual
allegations, the court must accept as true all well-pleaded material facts alleged in the complaint
and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-
Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629
F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint
"may not simply recite the elements of a cause of action, but must contain sufficient allegations
of underlying facts to give fair notice and to enable the opposing party to defend itself
effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from
the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office
Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the
plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556
U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Plaintiff Laura Pozos Leon ("Pozos Leon") is the mother of a minor child, Plaintiff M.D. ("M.D."). In March 2015, M.D. was four years old and in a special education program in the Tillamook County School District ("TCSD"). Defendant Community Action Team Incorporation of Columbia County, Oregon ("CAT") is a private, not-for-profit organization that provides educational services, including an early childhood development preschool program in Tillamook County that CAT runs under the assumed business name of Tillamook Head Start ("CAT Head Start" or "Head Start"). M.D. attended school at CAT Head Start. Defendant Northwest Regional Education Service District ("NRESD") is a regional education unit of the State of Oregon, providing services to Oregon school districts and students.

M.D. regularly rode a TCSD school bus to and from her CAT Head Start program. On March 19, 2015, at approximately 7:30 a.m., M.D. was picked up from home by a TCSD school bus driven by Defendant Gwen Russell ("Russell"). M.D. was strapped into a child safety seat on one of the bus seats, from which M.D. could not free herself, and M.D. fell asleep. The bus drive, Russell, forgot about M.D. and failed to drop her off at CAT Head Start. At approximately 8:15 a.m., Russell drove the bus to the TCSD transportation department, parked the bus in the "bus barn" for repairs, and left the bus. M.D. was still inside, asleep, and strapped into child safety seat unable to escape.

No adult other than Russell was on the bus, and TCSD does not have a policy requiring any adult other than the bus driver to ride on the bus. TCSD has a policy requiring drivers at the end of their routes to check buses for cleanliness and for persons or property left behind, and to leave a mark on the windshield to verify that the check has been performed. Russell admits that she failed to inspect the bus as required under TCSD's policy. No person in the transportation department inspected Russell's bus to see if the required mark was on the windshield or otherwise checked whether Russell had performed the required inspection.

M.D. awakened alone on the bus. She was in the dark and unable to free herself from the child safety seat. According to Plaintiffs, M.D. was traumatized and remains afraid of being alone, being in dark places, and riding in school buses.

On that same day of March 19, 2015, Pozos Leon was scheduled to chaperone a field trip for the CAT Head Start students. She arrived at Head Start at approximately 9:10 a.m., and was advised by a CAT employee that her four-year-old daughter, M.D., had not been dropped off at school that morning. No one previously notified Pozos Leon of M.D.'s absence. Pozos Leon immediately telephoned Russell, demanding to know M.D.'s whereabouts. Russell responded, "Oh my God! . . . I'll call you right back," and she hung up the telephone. A few minutes later Russell called back and reported that she had found M.D. in the bus in the TCSD bus barn. Russell advised Pozos Leon that someone would immediately drive M.D. to CAT Head Start. M.D. arrived at CAT Head Start approximately 20 minutes later. When M.D. was brought to Pozos Leon, no one informed Pozos Leon that when M.D. had been found, she was crying and visibly upset. Approximately 75 minutes had elapsed from M.D.'s confinement in the bus barn to her being transported to CAT Head Start.

Pozos Leon called law enforcement. During a police investigation, Defendant

Jay Marugg, the TCSD Transportation Director and Russell's supervisor, admitted that the

procedures and "route sheets" should be rewritten because they were confusing for bus drivers.

Pozos Leon requested a meeting with Defendant Randy Schild, TCSD's Superintendent.

He was not available and Pozos Leon met with his executive assistant, Gail Levesque.

Ms. Levesque told Pozos Leon that "things like this" happen "4 or 5 times a year." Ms. Levesque

falsely stated that M.D. was never alone and had adult supervision at all time. Ms. Levesque

promised to follow up with a telephone call, but did not.

Pozos Leon was informed by CAT Head Start personnel that no one was responsible for

meeting children when they arrive on the bus and that Head Start does not call families to check

on absences until the end of the day. Pozos Leon met with the Head Start director, a Head Start

teacher, Russell, and Marugg. They admitted that: (1) what had happened to M.D. was wrong

and there was no excuse; (2) Russell had called in sick the day of the incident but Marugg had

required to her to work due to a lack of available staff that day; (3) there should be another adult

on the buses, but TCSD had allocated the funding for other items; (4) Russell failed to follow

procedures; (5) Russell not only forgot about M.D. but never even stopped at CAT Head Start on

the day of the incident; (6) there is no system in place to ensure that drivers follow and complete

their routes each day; and (7) there is no verification to ensure that drivers properly check their

buses after parking them in the bus barn. Russell and Marugg also again stated, falsely, that M.D.

was never alone and had an adult with her at all times.

As a result of Defendants' alleged actions, Plaintiffs contend that both M.D. and Pozos

Leon suffered severe emotional distress and incurred damages in the form of medical, therapy,

and other expenses. M.D. also incurred physical injury and additional pain and suffering from

exacerbation of a preexisting hernia requiring surgery. Pozos Leon incurred additional pain and suffering from an earlier stroke.

## DISCUSSION

Plaintiffs allege the following seven claims against all Defendants: (1) violation of 42 U.S.C. § 1983 for infringement of M.D.'s Fourth Amendment right to liberty;[1] (2) violation of § 1983 for infringement of M.D.'s Fourteenth Amendment right to substantive due process; (3) violation of § 1983 for infringement of M.D.'s Fourteenth Amendment right to be free from foreseeable dangers created by state actors; (4) violation of § 1983 for infringement of Pozos Leon's Fourteenth Amendment rights as a parent; (5) negligence under Oregon common law based on the breach of a duty of care owed to M.D.; (6) negligence under Oregon common law based on the breach of a duty of care owed to Pozos Leon; and (7) negligent infliction of emotional distress under Oregon common law. Plaintiffs seek compensatory and punitive damages, injunctive relief, attorney's fees, and costs. Before the Court are: (1) CAT's motion to dismiss the four federal claims and the negligence claim by Pozos Leon against CAT; (2) NRESD's motion to dismiss all claims against NRESD; and (3) the TCSD Defendants'[2] motion to dismiss all claims against them.

---

[1] Although the amendments constituting the Bill of Rights apply to states only by virtue of their incorporation into the Fourteenth Amendment's Due Process Clause, a claim that a state actor has violated such an amendment is brought under § 1983 without reference to due process. *See, e.g.*, *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010). Thus, M.D. is considered to bring a claim under the Fourth Amendment, even though technically the application of the Fourth Amendment to Defendants operates through the Due Process Clause of the Fourteenth Amendment.

[2] TCSD, Schild, Marugg, and Russell are collectively referred to as the "TCSD Defendants."

**A. Fourth Amendment Claim**

**1. State Actor**

The Findings and Recommendation concluded that CAT was not a state actor for purposes of § 1983.[3] Plaintiffs object to that conclusion. Plaintiffs argue that CAT is a state actor under the "joint action" test used by the Ninth Circuit. The Ninth Circuit has described the "joint action" test for a private party to be held liable as a state actor as follows:

> Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. The test focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity. A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.
>
> * * *
>
> Our cases have been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights.

*Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quotation marks and citations omitted) (alteration in original).

Plaintiffs allege in the Second Amended Complaint that CAT is part of a state- and federally-established comprehensive program to provide early childhood education for preschool children with disabilities, as required under state and federal law. Plaintiffs recite Oregon and federal statutes, regulations, and rules that Plaintiffs allege govern the obligation to provide free and appropriate public education to M.D. and other similar students. Plaintiffs allege that the

---

[3] For purposes of the pending motion, NRESD and the TCSD Defendants conceded that they were state actors.

state-designated "contractor" for M.D.'s individualized special education program was NRESD and that the state-designated preschool for M.D. was CAT Head Start.

Plaintiffs also allege that CAT has a duty under the federal regulations to specify requirements for M.D.'s transportation plan, including pick-up and drop-off requirements, seating requirements, equipment needs, any special assistance needs, and any special training for bus drivers and monitors. Plaintiffs further allege that CAT relies on public school buses for the transportation of CAT's preschool students to and from CAT's Head Start program. Plaintiffs allege on information and belief that CAT was involved in budget and other decisions that resulted in the implementation of the policies that caused the deprivation of M.D.'s constitutional rights and that CAT made conscious and deliberate decisions regarding these policies that resulted in the deprivation of Plaintiffs' constitutional rights.

Plaintiffs assert that under state law pre-kindergarten programs like CAT are responsible for providing early childhood special education, are considered part of the state system of services for preschool children with disabilities, and the school district provides transportation for those programs. Or. Rev. Stat. §§ 343.455(1), 343.465(1)(c); Or. Admin. R. 581.015.2070. Plaintiffs allege in their Second Amended Complaint that even the State does not identify CAT Head Start as a private school, thereby confirming by implication that the State views CAT Head Start as part of the public school system. Thus, Plaintiffs argue, they have sufficiently alleged how CAT worked in concert with TCSD to craft a transportation system for CAT's students, and that transportation system is what gave rise to Plaintiffs' constitutional violations.

Under Ninth Circuit precedent, however, "for a private individual to be liable for a § 1983 violation when a state actor commits the challenged conduct, the plaintiff must establish that the private individual was the proximate cause of the violations." *Franklin*, 312 F.3d at 445.

A private party will not be found to proximately cause the injuries without "some showing that [the] private party had some control over state officials' decision [to commit the challenged act]." *Id.* at 446 (alterations in original). Here, although Plaintiffs allege that CAT was responsible for training Russell if M.D. had special requirements for her transportation and that CAT was, upon information and belief, involved in the policy decisions that resulted in the violation, these are not sufficient allegations that Russell *acted under the control* of CAT instead of TCSD, or that Russell did not use her own independent judgment when violating M.D.'s Fourth Amendment rights. *See id.* Accordingly, Plaintiffs fail to allege facts sufficient to show that CAT is liable for Russell's actions under § 1983. The Court does not, however, find that no further facts or information could be obtained in discovery that might show that Russell was acting under the control of CAT, and thus dismisses this claim without prejudice.

### 2. Unreasonable Seizure

#### a. Claim against Russell

Plaintiffs object to the conclusion in the Findings and Recommendation that M.D. fails to state a claim against Russell for a Fourth Amendment violation because there was no intentional acquisition of physical control over M.D. resulting in unreasonable confinement. Plaintiffs argue that when M.D. was strapped into her safety seat and was unable to freely leave, that was intentionally taking physical control of M.D. that constituted a seizure, and that under the facts and circumstances of this case, the seizure was unreasonable.

The Ninth Circuit has explained that "the issue of whether the [F]ourth [A]mendment applies to an instance of non-law enforcement governmental conduct requires us to decide whether that conduct was intended as a search or a seizure . . . ." *United States v. Attson*, 900 F.2d 1427, 1431 (9th Cir. 1990). "It is clear that the Fourth Amendment applies in the school environment." *Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908 (9th Cir. 2003); *see also*

*Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (finding that student told to stay in school conference room for several hours was seized under Fourth Amendment); *K.M. v. Chichester Sch. Dist.*, 152 F. Supp. 3d 412, 416 (E.D. Penn. 2015) ("The Fourth Amendment's prohibition of unreasonable seizures undoubtedly applies in the school context." (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985)).

"The general rule is that 'a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989). This is to ensure that the government is only held liable for a seizure that is "'willful' and not merely the consequence of 'an unknowing act.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Brower*, 489 U.S. at 596). Thus, a Fourth Amendment seizure occurs "only when there is a government termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 597 (emphasis in original).

Russell's strapping M.D. into her car seat was a termination of M.D.'s freedom of movement through means intentionally applied. M.D. was not able to freely leave the bus. The circumstances of M.D.'s confinement in the bus were different than that of other cases involving bus passengers because in those cases the passengers were freely able to leave the bus. *See United States v. Drayton*, 536 U.S. 194, 197, 203-04 (2002) (finding officers did not seize passengers when police boarded the bus at a rest stop and began asking passengers questions, did

not draw or brandish their weapons, made no intimidating movements, left the aisle free so passengers could exit, and spoke to passengers one at a time in a polite, quiet voice); *K.M..*, 152 F. Supp. 3d at 416 (finding no Fourth Amendment violation when the student was able to get off the bus after being left on it because there was no suggestion that the driver or attendant meant to confine the student on the bus); *Fulbright v. Dayton Sch. Dist. No. 2*, 2013 WL 1497388, at *4 (E.D. Wash. Apr. 10, 2013) (finding no Fourth Amendment violation when developmentally delayed and cognitively impaired adult was sexually assaulted on the bus because the plaintiffs did not allege that the victim's "liberty was restrained at all, let alone restrained to the degree that a reasonable person in her position would not have felt free to leave").

The fact that Russell strapped M.D. into her car seat for safety reasons does not render the act not a seizure for Fourth Amendment purposes. The Supreme Court explains that such an assertion "shifts the issue from the intent of the [state actor] as objectively manifested to the motive of the [state actor] for taking the intentional action . . ., and we have repeatedly rejected attempts to introduce this kind of subjectivity into Fourth Amendment analysis." *Brendlin*, 551 U.S. at 260; *see also Bacon v. United States*, 449 F.2d 933, 942 (9th Cir. 1971) ("Under . . . the Fourth Amendment, the essential element is the physical restraint placed upon the person, not the purpose behind the restraint."); *cf. Adams v. Hanson*, 656 F.3d 397, 408 n.6 (6th Cir. 2011) (noting that "some federal courts have applied wholesale the Fourth Amendment's warrant requirement to a material-witness arrest because 'the essential element' in analyzing a seizure of the person 'is the physical restraint placed upon the person, not the purpose behind the restraint.' (quoting *Bacon*, 449 F.2d at 942)). Nor does the fact that Pozos Leon consented to M.D.''s placement in the car seat mean that it is not a seizure. *See, e.g.*, *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 739 (2018) (noting the "substantial authority" holding

that voluntary submissions can constitute Fourth Amendment violations and citing numerous cases). Accordingly, M.D.'s confinement in the bus by Russell was a seizure under the Fourth Amendment. *See, e.g.*, *Rucker v. Harford Cty.*, 946 F.2d 278, 281 (4th Cir. 1991) (holding that "seizure" under the Fourth Amendment occurs when "one is the *intended object* of a physical restraint by an agent of the state" (emphasis in original)).

The purpose behind M.D.'s seizure, and the fact that Pozos Leon consented to the seizure, are all factors that the Court weighs in determining whether the seizure was reasonable. As the Ninth Circuit has explained,

> The Supreme Court has adopted a balancing test to determine whether a seizure is reasonable. We must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). In balancing these interests, courts may consider whether the individual consented to a seizure and search.

*United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). Because M.D.'s seizure was done with the consent of Pozos Leon and done to ensure M.D.'s safety during her regular bus ride, it was reasonable.

A seizure under the Fourth Amendment that starts out reasonable, however, can become unreasonable based on duration or other circumstances. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("It is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); *Segura v. United States*, 468 U.S. 796, 812 (1984) (plurality opinion) ("Of course, a seizure reasonable at its inception . . . may become unreasonable as a result of its duration or for other reasons."); *United States v. Song Ja Cha*, 597 F.3d 995, 999-1000 (9th

Cir. 2010) (finding that the seizure of a residence became unreasonable due to its duration).

Whether a reasonable seizure has become unreasonable requires evaluation of whether the

seizure remained "reasonably related in scope to the circumstances which justified it initially."

*United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985). This is generally a question

for the trier of fact. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1186 (9th Cir. 1995), *as*

*amended on denial of reh'g and reh'g* en banc (Dec. 29, 1995) (noting that an initial seizure of a

bar may have been found to be reasonable but whether the two-to-three hour detention of the

customers and subsequent conduct was reasonable was "certainly" a jury question); *Palladini v.*

*City of Milpitas*, 2009 WL 347278, at *4 (N.D. Cal. Feb. 6, 2009) ("Whether, after an initially

reasonable search and seizure of a bar, police conduct crosses the line so as to become

unreasonable is a question for the trier of fact."). When considered by a court, the court "should

not indulge in 'unrealistic second-guessing.'" *Montoya de Hernandez*, 473 U.S. at 542 (quoting

*United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Plaintiffs must allege sufficient facts from which it plausibly can be inferred that M.D.'s

initially reasonable seizure became unreasonable. Plaintiffs allege that the seizure of M.D.

became unreasonable because: (1) it lasted an unreasonable length of time; (2) M.D. was left

alone on the bus in a dark place; (3) Russell did not inspect the bus as required or put the marker

in the windshield; (4) no other employee checked to ensure Russell had inspected the bus or that

the marker was in place; and (5) M.D.'s prolonged seizure was the result of unreasonable

policies and procedures that were in place despite similar incidents having previously occurred.

At this stage of the litigation, Plaintiffs have sufficiently alleged that the seizure, although

reasonable at its inception, became unreasonable. Thus, Plaintiffs have adequately alleged a

Fourth Amendment claim against Russell.

**b. Claim against TCSD**

Plaintiffs also object to conclusion in the Findings and Recommendation that they have not adequately stated a claim under the Fourth Amendment against TCSD. "[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Liability may be alleged under *Monell* "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). In addition, "a plaintiff may show that an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the decision and the basis for it." *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997) (quotation marks omitted).

Plaintiffs allege that TCSD is liable for Russell's Fourth Amendment violation against M.D. because of TCSD's failure to act. Plaintiffs assert that TCSD both fails to enforce the policies it has and fails to implement appropriate policies to a degree that rises to the level of deliberate indifference. As the Ninth Circuit has explained:

> [A] plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights.

*Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185-86 (9th Cir. 2006) (citations omitted); *see also Redman v. Cty. of San Diego*, 942 F.2d 1435, 1445 (9th Cir. 1991) (en banc), *abrogated on other*

*grounds by Farmer v. Brennan*, 511 U.S. 825 (1994) (noting that "the routine failure (or claimed inability) to follow the general policy at the SBDF constitutes a custom or policy which overrides, for *Monell* purposes, the general policy").

The Court has already found that Plaintiffs sufficiently allege that Russell violated M.D.'s Fourth Amendment rights and thus the first element discussed in *Long* is met. Regarding the second element, to have deliberate indifference, a defendant must "have actual knowledge of, or willfully ignore, impending harm," meaning "the defendant knows that something *is* going to happen but ignores the risk and exposes someone to it." *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir.1996) (emphasis in original). It is something more than gross negligence. *Id.* at 898.

Plaintiffs allege that although TCSD has some policies in place relating to the transportation of students, TCSD and its supervisory employees, including Superintendent Schild, knew that these policies were not being followed and that similar incidents to what happened to M.D. happen "four or five times a year." Plaintiffs also allege that TCSD failed to investigate these incidents, take remedial action, or implement additional policies to prevent these incidents from reoccurring. Plaintiffs further allege that TCSD made a deliberate choice to adopt insufficient policies and practices that created the constitutional violation, including to have the drivers as the only adults on the bus, to implement and retain confusing route sheets, to implement and retain a system without any verification that drivers complete their routes, and to implement and retain a system without any verification that drivers inspect their buses before leaving them in the bus barn. These allegations are sufficient to state a claim that TCSD had a policy of inaction (both in enforcing its existing policies and in failing to enact new policies) that constituted deliberate indifference to M.D.'s constitutional rights. *See Long*, 442 F.3d at 1189-90 (discussing cases with triable issues of deliberate indifference for municipal inaction). TCSD

was transporting young children with special needs who would not be able to freely leave the bus if left unattended.

The Court also finds that Plaintiffs have alleged sufficient facts to show that TCSD's alleged customs and policies were the "moving force" behind Russell's violation of M.D.'s constitutional rights. "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury." *Id.* at 1190 (quotation marks omitted). Plaintiffs must demonstrate that M.D.'s injury would have been avoided had proper policies been in place. *Id.* Because Plaintiffs plausibly allege that a policy of having another adult on the bus, another TCSD employee confirming that Russell inspected her bus as required, or a system by which the completion of bus driver routes could be validated would have avoided M.D.'s injury, Plaintiffs thus adequately allege this element. Accordingly, Plaintiffs sufficiently allege *Monell* liability for TCSD based on TCSD's failure to act.

### c. Other Defendants

Plaintiffs note in a footnote that the Findings and Recommendation erred in stating that Plaintiffs do not allege or argue that the remaining Defendants acquired physical control over M.D., and offer limited argument relating to the other Defendants. Plaintiffs, however, primarily focus their argument in their objections on M.D.'s Fourth Amendment claim against Russell and TCSD. Plaintiffs request that if the Court dismisses the Fourth Amendment claim against the other Defendants, the Court dismiss the claim without prejudice because discovery may uncover additional facts. As noted above, the Court dismisses the Fourth Amendment claim against CAT without prejudice because based on Plaintiffs' current allegations there may be additional facts sufficient to show that Russell acted under the control of CAT.

With respect to Schild and Marugg, Russell's supervisors, there is no *respondeat superior* liability under § 1983. A supervisor may be held liable under § 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation marks and citation omitted). The requisite showing can be established by demonstrating that the supervisor: (1) set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury; (2) had his or her own culpable action or inaction in the training, supervision, or control of his or her subordinates; (3) acquiesced in the constitutional deprivation by subordinates; or (4) engaged in conduct that shows reckless or callous indifference to the rights of others. *Id.* at 1207-08. Plaintiffs do not allege that Schild or Marugg were personally involved in confining M.D. on the bus and leaving her there on March 19, 2015, but Plaintiffs allege that they set in motion the actions of Russell and failed to terminate her actions that they knew or reasonably should have known would violate M.D.'s constitutional rights, that they knew and acquiesced to the alleged misconduct, and that they engaged in conduct that shows a reckless and callous disregard for the rights of others.

Plaintiffs also allege that Schild's executive assistant informed Pozos Leon that children are left behind in buses "four or five times a year." This is sufficient to show Schild's knowledge of this fact, but not to show Marugg's knowledge. The only specific allegation with respect to Marugg is that he required Russell to work on March 19, 2015, despite knowing that Russell was sick. The other allegations relate to Marugg's more general knowledge. This is not sufficient to show Marugg's personal participation or supervisor liability under § 1983. The Court agrees,

however, that discovery may provide additional facts relating to Marugg's conduct that would support a claim, and thus this claim is dismissed without prejudice.

Regarding Schild, Plaintiffs allege that he knew that students were being left behind in buses several times a year, and yet did nothing to correct this problem. Plaintiffs also allege that he knew that TCSD had ineffective and unenforced procedures for ensuring that bus drivers followed their routes. Plaintiffs further allege that he, along with Marugg, required Russell to come to work on March 19, 2015, despite the fact that she was sick. These are sufficient at this stage of the litigation to allege that Schild showed reckless or callous indifference to the rights of the children, including M.D., and that he knowingly refused to terminate a series of acts that he knew or should have known would cause constitutional injury. The children on these buses included those between the ages of three and five with disabilities, and thus included a highly vulnerable population. Allowing drivers to continue to leave them behind on a bus, as Plaintiffs alleged repeatedly occurred with Schild's knowledge, when the children were likely going to be confined without any means of escape, will likely result in a deprivation of constitutionally-protected liberty.

Regarding NRESD, Plaintiffs do not allege facts showing how NRESD was directly involved in the deprivation of M.D.'s liberty. Although the Court is skeptical that discovery will provide facts supporting a Fourth Amendment claim against NRESD, the Court cannot definitively conclude that there will be no possible evidence showing NRESD's personal participation and thus will also dismiss this claim without prejudice.

## B. M.D.'s Fourteenth Amendment Claims

### 1. Substantive Due Process

The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus, a plaintiff "cannot 'double up' constitutional claims." *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).

*Albright* involved a claim for excessive force during an alleged unlawful arrest, and thus involved alleged improper actions during a seizure. 510 U.S. at 271 (noting that Albright's "surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment"). The Supreme Court held that the government's actions must be analyzed under the Fourth Amendment and not substantive due process. *Id.* at 274-5. Similarly, the Ninth Circuit has held that when a police officer sexually assaults a person during a seizure, that conduct must be analyzed under the Fourth Amendment, as opposed to when a police officer sexually assaults a person outside of a seizure, which must be analyzed under substantive due process. *Fontana v. Haskin*, 262 F.3d 871, 881-82 and n.6 (9th Cir. 2001). The Supreme Court has found substantive due process may be appropriate, however, when the Court found that there was no seizure and thus the Fourth Amendment did not apply to the plaintiff's claims. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment. It is not.").

M.D.'s substantive due process claim is based on the same alleged misconduct as her Fourth Amendment claim. It is true that not all substantive due process claims will necessarily be duplicative. *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."); *Webb v. Cty. of Trinity*, 734 F. Supp. 2d 1018, 1027 (E.D. Cal. 2010) ("Of course,

an action may violate multiple constitutional prohibitions, and not every substantive due process claim will be duplicative."). Substantive due process claims have been found to apply as well as a specific constitutional provision when there was different government conduct at issue or where the government conduct implicates different interests. *See Webb*, 734 F. Supp. 2d at 1027; *Schneider v. Cty. of Sacramento*, 2014 WL 4187364, at *8 (E.D. Cal. Aug. 21, 2014). Neither situation is present here. The conduct is the same, and M.D.'s affected interests are the same. Accordingly, M.D.'s claim is appropriately analyzed under the Fourth Amendment, and not substantive due process.[4] Thus, M.D.'s generic substantive due process claim is dismissed.

### 2. State-Created Danger Claim

Plaintiffs also allege a claim against all Defendants under the "state-created danger" doctrine, alleging a substantive due process violation. This doctrine provides that a state actor can be held liable under the Due Process Clause under certain circumstances when otherwise a state actor would not generally be held liable, such as for its own omissions or for the actions of a private actor. It appears that Plaintiffs are alleging the former because Russell is not alleged to be a private actor.

A state may be held liable under the Due Process Clause for its omissions "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016). The state must have engaged in affirmative conduct that placed the plaintiff in danger, and this conduct must have placed the plaintiff in a worse position that if the state had not acted at all. *Id.* at 1125. "The affirmative act must have exposed the plaintiff to an actual, particularized danger and the

---

[4] Plaintiffs' reliance on *K.M.* is unavailing because in *K.M.* the court found that there was no seizure and thus the Fourth Amendment could not serve as the explicit textual source of constitutional protection to supersede substantive due process as discussed in *Albright*.

resulting harm must have been foreseeable." *Id.* (quotation marks and citation omitted). Additionally, the state "must have acted with deliberate indifference to a known or obvious danger." *Id.* (quotation marks omitted).

Plaintiffs merge the conduct of all Defendants together in this claim. But the Court separately considers the allegations against each Defendant. There are insufficient allegations that Marugg, CAT, or NRESD affirmatively acted to put M.D. in danger or acted with deliberate indifference to a known or obvious danger. Plaintiffs also do not allege any affirmative act by Schild that placed M.D. in danger. Although the Court finds that Plaintiffs sufficiently allege that Schild showed reckless or callous indifference to the rights of M.D. and that he knowingly refused to terminate a series of acts that he knew or should have known would cause constitutional injury for purposes of M.D.'s Fourth Amendment claim, that is not the same as alleging an affirmative act for purposes of M.D.'s state-created danger claim.

Regarding Russell,[5] there are insufficient allegations showing that she acted with deliberate indifference. Plaintiffs do not allege that Russell knew that children were being left on buses four or five times per year, or otherwise show how it was a known or obvious danger to Russell that children would be left on a bus as a result of Russell's actions. Although Russell acted intentionally to confine M.D. and take physical control of her person, seizing M.D. for purposes of the Fourth Amendment, and that seizure is sufficiently alleged to have become unreasonable, that is different than acting with deliberate indifference to expose M.D. to a known or obvious danger.

---

[5] It is unclear whether Plaintiffs intend to allege this claim against Russell. The claim states that it is against all Defendants, but ¶ 55 of the Second Amended Complaint, under the heading "Danger Creating Exception," states that TCSD, NRESD, Head Start, Marugg, and Schild had an affirmative duty to protect M.D., and does not list Russell.

Finally, with respect to TCSD because Russell and Schild are both TCSD employees, their combined actions suffice to meet the elements of the state created danger doctrine. Schild acted with deliberate indifference and Russell engaged in the requisite affirmative act that exposed M.D. to actual, particularized danger that was foreseeable (confining M.D. in the bus and leaving her there alone, without inspecting the bus). The alleged omissions of TCSD include failing to implement policies of having another adult on the bus, having more easily understood bus routes, having a better validation policy that bus routes were followed, and having a better validation policy that buses properly were inspected. *See, e.g.*, *K.M.*, 152 F. Supp. 3d at 419 (noting that school district knew the plaintiff and other students on the bus had special needs and that "if the evidence were to show that the School District had no policies or procedures to protect them, or provided no training designed to meet their needs, a reasonably jury could find deliberate indifference that is shocking"). Thus, M.D.'s claim against TCSD alleging a violation of § 1983 for infringement of M.D.'s Fourteenth Amendment right to be free from state-created dangers may proceed.

## C.  Pozos Leon's Due Process Claim

Plaintiffs' Fourth Claim for Relief alleges that Defendants caused the deprivation of Pozos Leon's right as a parent to direct the education and upbringing of M.D., and that Defendants infringed on Pozos Leon's liberty interest in the companionship and society of her child. The Ninth Circuit has held that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child. The state's interference with that liberty interest without due process of law is remediable under section 1983." *Kelson v. The City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985). The Supreme Court has held that parents have a constitutionally protected liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 752-57 (1982).

Plaintiffs allege that Defendants violated these rights of Pozos Leon by: (1) causing M.D. to be confined, alone and unsupervised; (2) failing to have effective procedures for timely ensuring notification to Pozos Leon when M.D. failed to show up at CAT Head Start; (3) concealing from Pozos Leon M.D.'s severe emotional distress when confined in the bus barn; (4) having in place procedures and bus routes that Defendants admit were confusing to bus drivers; (5) failing to have proper procedures to ensure drivers completed their bus routes; (6) failing to have sufficient procedures to alert the driver to M.D.'s presence on the bus when it was parked in the bus barn; (7) failing to have sufficient procedures to ensure someone verified that drivers followed procedures for clearing buses after they were parked; (8) failing properly to investigate or address these deficiencies despite knowing that students had been left on buses four or five times per year; (9) requiring Russell to work on March 19, 2015, despite the fact that she was sick that day; (10) failing to have anyone meet M.D. when she was dropped off at Head Start; (11) knowingly allowing these deficiencies to continue despite the fact that highly vulnerable populations were riding these buses; (12) misleading Pozos Leon by stating that M.D. always had adult supervision when, in fact, M.D. was left alone on the bus; and (13) minimizing what happened to M.D. by lying to Pozos Leon and promising to get back in touch with her and then failing to do so.

In their objections to the Findings and Recommendation, Plaintiffs argue that Pozos Leon entrusted the custody and care of M.D. to Defendants, including relying on Defendants safely to transport M.D. to and from CAT Head Start. Plaintiffs contend that because of M.D.'s status as a special education student, Pozos Leon and Defendants agreed on an individual education program, which included details regarding transportation, and Defendants' failure to follow this plan infringed on Pozos Leon's parental rights.

Pozos Leon brings a substantive due process claim under the Fourteenth Amendment asserting a violation of her familial rights. To violate substantive due process, official conduct must "shock[] the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Although the Court has found that Plaintiffs sufficiently allege certain claims, including Fourth Amendment and state-created danger claims, against certain defendants, the Court does not find that Plaintiffs sufficiently allege that Defendants' conduct shocks the conscience with respect to infringing on Pozos Leon's parental rights. The Court has already found that Plaintiffs do not sufficiently allege that Russell acted with deliberate indifference in leaving M.D. on the bus, and that is the primary conduct that Pozos Leon argues deprived her of her parental rights. The deviation from the agreed-upon transportation plan was not a deliberate act. Most of the alleged conduct after discovery of the fact that M.D. was left on the bus, although likely distressing, did not interfere with Pozos Leon's parental rights.

The Court recognizes that some courts have found short-term seizures to constitute interference with parental rights. *See, e.g.*, *Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003) (holding that "because the defendants had no evidence giving rise to a reasonable suspicion that the plaintiff parents were abusing their children, or that they were complicit in any such abuse, the defendants violated the plaintiffs' right to familial relations by conducting a custodial interview of John Doe Jr. without notifying or obtaining the consent of his parents"); *Dees v. Cty. of San Diego*, --- F. Supp. 3d ---, 2017 WL 4511003, at *8 (S.D. Cal. Oct. 10, 2017) (finding that parent's "right to protect her child from being seized without the procedural protections of the Fourth Amendment" outweigh government's interest in conducting the child abuse interview because there was no evidence of abuse, social worker knew that mother would not consent to a private interview without attorney present, and social worker went to the school to speak to child

alone). These cases, however, are all distinguishable because they involved custodial interviews in child abuse investigations, which implicate broader parental rights and concerns than the facts alleged by Plaintiffs.

## D. M.D.'s Negligence Claims

NRESD moves to dismiss Plaintiffs' negligence claims. NRESD argues that Plaintiffs do not allege any affirmative act by NRESD giving rise to a claim of negligence, and the Court agrees.

The TCSD Defendants do not explicitly move to dismiss these claims. Instead, they argue that Plaintiffs cannot plead both a § 1983 and state-law negligence claim on the same set of facts. Under Rule 8 of the Federal Rules of Civil Procedure, however, a plaintiff may "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also* Fed. R. Civ. P. 8(d)(2) (noting that a "party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones"). Thus, Plaintiffs may plead under § 1983 and, in the alternative, under negligence. Plaintiffs may not, however, advance both negligence and constitutional claims based solely on the same facts at summary judgment or trial. *See, e.g.*, *Gainer v. City of Troutdale*, 2016 WL 107957, at *11 (D. Or. Jan. 8, 2016), *aff'd*, 715 Fed. App'x. 649 (2018) (district court noting that a plaintiff may "plead alternative theories of liability under state common law and § 1983," but dismissing the negligence claim at summary judgment because a plaintiff may not "proceed with a cause of action for negligence based solely on the same facts underlying his or her § 1983 claim"); *Rodriguez v. City of Portland*, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009) (discussing cases dismissing negligence claims at summary judgment, Rule 8, the differences between a 12(b)(6) motion and summary judgment, and concluding "that at the initial pleading stage a plaintiff may base claims of negligence under state law and claims of constitutional violations under 42 U.S.C.

§ 1983 on the same facts"). Thus, TCSD Defendants' argument that Plaintiffs must "choose" their theory at this stage of the litigation is rejected.

**E.  Pozos Leon's Negligence Claim**

All Defendants move to dismiss the negligence claim asserted by Pozos Leon. They argue that Pozos Leon cannot recover for purely emotional distress damages because she fails to allege facts that meet Oregon's bystander negligence test. Pozos Leon responds that she can recover for these types of damages if she either meets the bystander test or alleges intentional misconduct. On the latter point, Pozos Leon cites *Achar-Winkels v. Lake Oswego Sch. Dist.*, 2017 WL 2291338, at *7 (D. Or. May 25, 2017). Pozos Leon, however, misunderstands *Achar-Winkels*. That case noted that damages for purely emotional distress might be available under Oregon law either for intentional conduct, which is more than mere negligence, or for negligent conduct that "causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Id.* (quoting *Philibert v. Kluser*, 360 Or. 698, 702 (2016)).[6] Thus, for Pozos Leon's *negligence* claim, which seeks only emotional distress damages, Plaintiffs must still allege conduct that meets the rule articulated in *Philibert*.

In *Philibert*, the Oregon Supreme Court discussed various tests for allowing "bystander" recovery of emotional distress damages, and adopted the test set forth in the Restatement (Third) of Torts, § 48. *Philibert*, 360 Or. at 702-15. Under Oregon law, a bystander may recover when: (1) the bystander observes a defendant negligently causing sudden serious bodily injury to another; (2) the bystander suffers serious emotional distress; (3) the bystander perceives the event contemporaneously, and (4) the bystander is a close family member of the person suffering the bodily injury. *Id.* at 711. "The first element is that the bystander must witness a sudden,

---

[6] This quote from *Achar-Winkels* is actually quoting one of the tests that *Achar-Winkels* discusses, but does not ultimately adopt.

*serious physical injury* to a *third* person negligently *caused* by the defendant." *Id.* at 712 (emphasis in original). The second element requires "*serious* emotional distress" because "emotional distress is an unavoidable and essential part of life." *Id.* at 713 (emphasis added). For the third element, "the plaintiff must have perceived the events that caused injury to the third person as they occurred." *Id.*

Considering these factors, Pozos Leon does not sufficiently allege a claim for bystander recovery. She did not *observe* Defendants causing harm to M.D. because Pozos Leon did not observe M.D.'s confinement as it was happening, and M.D. did not *suddenly* suffer *serious* physical injury.

**F. Summary**

To summarize the Court's holdings: (1) all claims against NRESD are dismissed; (2) all claims against Marugg are dismissed; (3) M.D.'s Fourth Amendment claim is dismissed against CAT, NRESD, and Marugg; (4) M.D.'s substantive due process claim is dismissed against all Defendants; (5) M.D.'s state-created danger claim is dismissed against all Defendants except TCSD; (6) Pozos Leon's due process claim is dismissed against all Defendants; (7) M.D.'s negligence claims are dismissed against NRESD and Marugg; and (8) Pozos Leon's negligence claim is dismissed against all Defendants.

**CONCLUSION**

The Court declines to adopt the Findings and Recommendation (ECF 54). Defendant Northwest Regional ESD's motion to dismiss (ECF 35) is GRANTED. The Tillamook County School District Defendants' motion to dismiss (ECF 36) is GRANTED IN PART. Defendant Community Action Team's motion to dismiss (ECF 33) is GRANTED IN PART. As currently pleaded, Plaintiffs may proceed but only on the following claims: (1) M.D.'s Fourth Amendment claim against TCSD, Russell, and Schild; (2) M.D.'s state-created danger claim against TCSD;

and (3) M.D.'s negligence claims against TCSD, Russell, Schild, and CAT. If Plaintiffs believe, consistent with Rule 11, that they can cure the deficiencies identified in this Opinion and Order, Plaintiffs have leave to file a further amended complaint within 14 days of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 11th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge