**Charese A. Rohny, OSB No. 953964**
charese@rohnylaw.com
**Maria Witt, OSB No. 145573**
maria@rohnylaw.com
Charese Rohny Law Office, LLC
1212 SE Spokane Street
Portland, OR  97202
Telephone: 503.206.8595
     Of Attorneys for Plaintiff

**Isaac Ersoff, OSB No. 952600**
isaac@aezlawoffice.com
Andrews Ersoff & Zantello
2941 NW Highway 101, Suite A
Lincoln City, OR 97367
Telephone: 541.994.7350
     Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LAURA POZOS LEON**, individually and on behalf of **M.D.**, a minor,<br><br>       Plaintiff,<br><br>  v.<br><br>**TILLAMOOK COUNTY SCHOOL DISTRICT; COMMUNITY ACTION TEAM, INCORPORATED OF COLUMBIA COUNTY, OREGON *dba* TILLAMOOK HEAD START; GWEN RUSSELL;** and **RANDY SCHILD,** each in their individual and official capacities,<br><br>       Defendants. | Case No.: 3:17-cv-00440-PK<br><br>**THIRD AMENDED COMPLAINT**<br><br>42 U.S.C. §§ 1983 and 1988 (Violation of Fourth and Fourteenth Amendments to the U.S. Constitution); Negligence; Negligent Infliction of Emotional Distress<br><br><br>**JURY TRIAL REQUESTED** |

## NATURE OF THE CASE

1.      This is an action for civil rights violations and deprivation of federal constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988, and state torts claim for negligence and negligent infliction of emotional distress.

2.      Laura Pozos Leon brings this action on behalf of her minor daughter M.D., who at all material times was a 4-year-old special education student within the Tillamook County School District("District"), attending Tillamook Head Start ("Head Start"), and receiving services from the Northwest Regional Education Service District in Tillamook ("Northwest Regional ESD").

3.      Plaintiff's action arises from M.D. being confined in a District school bus, alone, unsupervised, in the District "bus barn" (the garage in which mechanical repairs are performed on District school buses).

4.      Plaintiff seeks that M.D. be made whole and seeks compensation for damages, including economic damages in the form of medical, therapy, and other expenses, as well as non-economic damages in forms including, but not limited to, pain and suffering from exacerbated hernia problems and surgery (M.D.) and extreme emotional distress.  This is also an action to vindicate plaintiff's rights and the rights of other students to liberty and due process, and the protection of their safety while under public school supervision and control; and to vindicate parents' rights; thus, plaintiff seeks injunctive relief.

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

**JURISDICTION AND VENUE**

5.       This court has jurisdiction over the subject matter of this complaint pursuant to

28 U.S.C. § 1331.  This action is authorized and instituted pursuant to 42 U.S.C. §§ 1983 and

1988.

6.       Jurisdiction is proper over plaintiff's claims of violations of the Fourth

Amendment and the Fourteenth Amendment to the U.S. Constitution under 28 U.S.C. § 1331.

7.       The court has jurisdiction over plaintiff's state law claims set forth in this

complaint pursuant to its supplemental jurisdiction to hear related state law claims under

28 U.S.C. § 1367(a).  Both the federal and state claims alleged herein arose from a common

nucleus of operative fact, the state actions are so related to the federal claims that they form part

of the same case or controversy, and the actions would ordinarily be expected to be tried in one

judicial proceeding.

8.       The defendants' actions alleged herein were committed within the jurisdiction of

the United States District Court, District of Oregon.  Accordingly, venue in this judicial district is

proper under 28 U.S.C. § 1391.

**PARTIES**

9.       **Laura Pozos Leon**, as mother of **M.D.**, and M.D. are both residents and citizens

of Tillamook County, Oregon.  At all material times, M.D. was a 4-year-old special education

student within the Tillamook County School District, attending Tillamook Head Start, and

receiving services from the Northwest Regional Education Service District in Tillamook.

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

10.     Defendant **Tillamook County School District** is a local governmental unit operating a public school district for education under the laws of Oregon.  Defendant District is a recipient of federal financial assistance.

        a.     Tillamook County School District established governmental policy as it relates to education and services provided to children and the transportation of students, including policies and practices relative to bus routes, safety of children, and the supervision of bus drivers.

11.     Defendant **Community Action Team Incorporated of Columbia County, Oregon** *dba* **Tillamook Head Start** is a private, not-for-profit corporation that provides multiple services and resources through various programs.  The Community Action Team's Child and Family Development programs include the Head Start program in Tillamook County. Tillamook Head Start, is an early childhood development preschool program in Tillamook County.

12.     Defendant **Gwen Russell** was, at all times material to this complaint, M.D.'s school bus driver (the bus being a District school bus), who was authorized to act on behalf of the Tillamook County School District.  At all material times, defendant Russell was acting within the course and scope of her employment and under color of state law.

13.     Defendant **Randy Schild** was, at all times material to this complaint, the superintendent of Tillamook County School District, who was authorized to act on behalf of the District.  At all material times, Defendant Schild was acting within the course and scope of his employment and under color of state law.

Page 4      **THIRD AMENDED COMPLAINT**

## PROCEDURAL REQUIREMENTS

14.     All prerequisites to filing this action have been timely filed.  The events herein alleged took place on March 19, 2015.  Plaintiff met the requirements of ORS 30.275, and ORS 30.260 to 30.300, by mailing a tort claim notice to the District, Head Start, the Northwest Regional ESD, and the authorized representative of Head Start by certified mail on September 11, 2015 (i.e., within 180 days of the alleged events), and this lawsuit is timely filed within the requisite 2 years from March 19, 2015.

## FACTUAL ALLEGATIONS:
### THE EVENTS OF MARCH 19, 2015

15.     At all material times, M.D. was a 4-year-old special education student within the Tillamook County School District, attending Tillamook Head Start, and receiving services from the Northwest Regional Education Service District in Tillamook.

16.     M.D. rode a District school bus to and from Head Start.

17.     On March 19, 2015, the school bus, driven by Gwen Russell, picked up M.D. at her residence at approximately 7:30 a.m. to take her to Head Start.

18.     Other than the driver, there was no adult on the bus and District procedure has no requirement of the presence of an additional adult employee on the bus.

19.     Rather than drop off M.D. at Head Start, after the driver dropped off all the other children on the bus at their proper locations, Russell drove to the District transportation department, parked the bus in the bus barn for repairs, and left the bus at approximately 8:15 a.m. leaving M.D. in the back of the bus unattended.  Even though the bus driver's route called for her to stop at Head Start to drop off M.D., the bus driver did not stop at Head Start.

Page 5        **THIRD AMENDED COMPLAINT**

20.     The driver left M.D. alone, confined inside the bus, strapped into a car seat, asleep, and unsupervised.

21.     District procedure required the bus driver to check the entire bus for the presence of persons or belongings prior to leaving the bus parked at completion of her morning route. After such check, the drive was supposed to leave a marker inside the windshield of the bus to enable verification from the outside of the bus that the bus driver had indeed made the required check of the bus.

22.     The driver later said she forgot about M.D.  The driver also said that she had failed to find M.D. when she parked the bus because the driver had not followed proper procedure, that is, she had not thoroughly checked to make sure the bus was empty.  Russell also failed to leave the required marker inside the windshield.

23.     No one subsequent to the bus driver checked M.D.'s bus after it was parked to verify that the required marker had been placed inside the windshield.  Therefore, no one checked the bus for the presence of persons before leaving the bus parked in the bus barn.

24.     M.D. awoke in the bus, alone, in what was to M.D. an "unknown dark place," with no way to get out, and with no one to help her.

25.     Meanwhile, Head Start had a field trip planned for the day and Pozos Leon, M.D.'s mother, was scheduled to participate.

26.     As planned, Pozos Leon arrived at Head Start at approximately 9:10 a.m.  When Pozos Leon arrived, a staff member told her that M.D. was not there.  Another staff member, Victoria Mata, walked up at the same time and said, "Where is M.D.?"  Head Start staff had not previously notified Pozos Leon that M.D. had not arrived on the bus as usual.

Page 6        **THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

27.     Pozos Leon was understandably extremely concerned.  Pozos Leon, still at the Head Start facility, telephoned the bus driver and demanded to know what had happened to M.D. The bus driver responded as follows, "Oh my God! ... I'll call you right back" - and then hung up on Pozos Leon.

28.     The driver telephoned Pozos Leon a few minutes later to say that she had found M.D., in the bus, in the bus barn, where the driver had left M.D.  The driver told Pozos Leon that someone would bring M.D. right over to Head Start.  M.D. was crying and very upset when she was found, but the driver concealed this fact from M.D.'s mother, Pozos Leon at this time.

29.     M.D. was delivered to Pozos Leon at Head Start approximately 20 minutes later. Pozos Leon, traumatized, left with a likewise traumatized M.D.

30.     Pozos Leon consulted the police, who advised her that this was a civil matter and recommended that Pozos Leon go to the District office to make a report.

      a.     The police did, however, investigate, and the bus driver admitted to the police that she had forgotten about M.D. and had failed to follow existing procedures.

      b.     The driver's supervisor, Jay Marugg, the District Transportation Director, admitted to the police that the procedures and "route sheets" should be rewritten because they were too confusing for drivers.

31.     Pozos Leon went to the District office and asked to meet with Superintendent Randy Schild, but he was not available.  Instead, she met with Mr. Schild's executive assistant, Gail Levesque.  Ms. Levesque told Pozos Leon that "things like this" happen "4 or 5 times a year."  This statement increased Pozos Leon's distress.

**THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

32.   Defendant Schild had knowledge of prior incidents that happen "4 or 5 times a year."

    a.    Defendant Schild failed to investigate the prior incidents.

    b.    Defendant Schild failed to take remedial action and prevent repeated occurrences which resulted in deliberate indifference to the rights and safety of students.

33.   Ms. Levesque also falsely asserted that M.D. was never alone and was always under adult supervision.

34.   Ms. Levesque promised Pozos Leon a follow-up phone call.  The promise was not fulfilled.

35.   Pozos Leon next went to Head Start and asked some questions.

    a.    First, who is responsible for meeting children when they arrive on the bus in the morning?  A Head Start agent answered no one.

    b.    Second, why didn't anyone from Head Start call in the morning to check on M.D.'s absence?  A Head Start agent answered it is not Head Start's procedure; instead such calls are made at the end of the day.

36.   Pozos Leon then had a conference with the Head Start director, a Head Start teacher, the bus driver Russell, and the transportation director Marugg, who admitted the following:

    a.    What had happened to M.D. was wrong, and they had no excuse for what happened;

**THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

b.    The bus driver was sick and had called in sick that day, but the District required her to work anyway due to lack of staff;

c.    The bus driver (and others in her position) should have another adult on board so that one adult can focus on driving and the other adult can focus on children, but the District allocated the necessary funds to other things instead;

d.    The bus driver did not follow procedure;

e.    Not only did the bus driver forget about M.D. being in the bus, but the driver never even stopped at Head Start on March 19, 2015, which was part of her route schedule for the day;

f.    There was no system in place to make sure that bus drivers follow and complete their routes each day; and

g.    There was no verification to make sure that M.D.'s bus driver had properly checked her bus after she parked it in the bus barn.

37.    The director Marugg and the bus driver Russell repeated the false assertion previously made by Ms. Levesque that M.D. "was never left alone and always had an adult with her."

38.    At a later date, the District hand-delivered to Pozos Leon an undated, unsigned, and incomplete "incident report" on the above events. The report states that the District "worked on revising the . . . route sheets on Friday, March 20, 2015."

39.    As a direct result of the above-described actions of defendants, plaintiff suffered damages including economic damages in the form of medical, therapy, and other expenses, as

well as non-economic damages in forms including, but not limited to, pain and suffering from exacerbated hernia problems and surgery (M.D.), and extreme emotional distress.  M.D. continues to be traumatized by the events, remaining afraid of being alone, being in dark places, and riding the school bus.

## FACTUAL ALLEGATIONS:  STATE ACTORS

40.    Parts B and C of the *Individuals with Disabilities Educational Improvement Act* (hereafter, "IDEA") requires local school districts to identify all students with disabilities with the district between the ages of 3 and 5 and to provide each of those students with a free and appropriate public education through the development of an *Individualized Family Service Plan* (hereafter, "Individualized Program").  (34 CFR Part 300)  This is called *Early Childhood Special Education*.

41.    In Oregon, this requirement is met through a three-part system designed by the Oregon Department of Education ("Department of Education"). (*Oregon Revised Statutes* 343.521 and *Oregon Administrative Rules* 581-015-27 00-2860.)  Each of the three actors below is governed by state and federal statutes and rules with regard to providing students with disabilities a free and appropriate public education.  (*Id.*)

  a.    The first actor in Oregon's Early Childhood Special Education structure is a state designate a "contractor."  (*Id.*)

  b.    The second actor is the "pre-school."

  c.    The third actor is the local school district.  (*Id.*)

42.    In the present case, the state designated "contractor" for M.D.'s Individualized Program was Northwest Regional ESD.

Page 10    **THIRD AMENDED COMPLAINT**

43.     The state designated "pre-school" for M.D.'s Individualized Program was Head Start.

44.     The state designated school district for M.D.'s Individualized Program was Tillamook School District.

45.     In addition to the three actors described above, the federal and state schemes for Early Childhood Special Education provide that the parents are required team members with significant rights to direct and control the education of their children with disabilities.  As the Northwest Regional ESD's parental handbook for Early Childhood Special Education states: "Parents are valuable members of the [Individualized Program] team ….  Together, we will develop a program that meets the needs of your child and family.  We are also available whenever you have any questions or concerns. Please feel free to call your [Northwest Regional ESD] service coordinator at any time to discuss progress or share information about your child. If you still have questions after talking with the service coordinator, please call the coordinator of the [Head Start] where your child attends.

### FACTUAL ALLEGATIONS:  STATE ACTORS AND STATE INDIVIDUAL DEFENDANTS' DEPRIVATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

### Defendant Tillamook Head Start

46.     Based on the above-described state and federal Early Childhood Special Education delivery system, **Head Start**'s role was as follows:

  a.     Head Start is the school M.D. attended.  It is the location in which M.D.'s Individualized Program education and services were delivered to M.D. by the Northwest Regional ESD and Head Start.

Page 11      **THIRD AMENDED COMPLAINT**

b.     Head Start participates as a required member of the Individualized
Program Team.

c.     Pursuant to 45 CFR § 1310.22, one of Head Start's duties as part of the
Individualized Program Team is to ensure that school buses are available
to transport children with disabilities enrolled in the program.  Head Start
was required to ensure that M.D.'s Individualized Program specified her
transportation requirements and that her transportation requirements were
followed, including:  pick-up and drop-off requirements; seating
requirements; equipment needs; any special assistance that may be
required; and any special training for bus drivers and monitors.

d.     On information and belief, Head Start was responsible for the policy and
procedures relative to bus transportation and M.D.'s safe delivery to and
from Heat Start that caused the deprivation of M.D.'s constitutional rights.
Such relevant policies and the failure to have certain policies and
procedures which caused the violation of M.D.'s rights include, but are not
limited to:

i.     No one is responsible for meeting with children when they arrive
on the bus at Head Start.

ii.     The procedure to notify parents of their child's absence is made at
the end of the day, instead of at the beginning of the school day.

iii.     There is no system to ensure bus drivers follow and complete their
routes.

Page 12          **THIRD AMENDED COMPLAINT**

       iv.     There is no verification system to ensure bus drivers properly check their bus after it is parked in the bus barn.

       v.     The bus driver is the only adult on the bus.

   e.     On information and belief, Head Start was also involved in budget and decisions that resulted in the implementation and execution of policies and procedures that caused the deprivations of M.D.'s rights.

   f.     On information and belief, Head Start made conscious and deliberate decisions regarding the promulgation of policies and procedures and the various alternatives that may have been instituted, such that it amounts to a policy of deliberate indifference to the rights of those affected, including M.D.

### Defendant Tillamook County School District

47.     Based on the above-described state and federal Early Childhood Special Education delivery system, **Tillamook County School District's** role was as follows:

   a.     Tillamook School District was a required member of the Individualized Program Team, whose attendance at, and participation in, Individualized Program Team meetings can be excused only with parental agreement.

   b.     Tillamook School District was responsible to ensure the existence of appropriate and effective procedures to address M.D.'s transportation needs.

    **THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

c.    Tillamook School District was responsible to ensure that appropriate and effective transportation procedures were followed by Tillamook School District staff.

d.    On information and belief, the relevant procedures implemented by Tillamook School District included, but were not limited to, the following:

i.    Drivers reported to the transportation department in the morning to pick up their buses.

ii.    Drivers were the only adults in the school buses (by deliberate choice, there were no monitors).

iii.    Drivers picked up students according to their route for the day.

iv.    Drivers dropped off students at their schools according to the route for the day.

v.    After delivering all students to their correct locations, the drivers drove their buses back to the transportation department, where each driver was to park in a designated space in designated area.

vi.    Upon parking in the correct space, the driver of each bus was supposed to check the entire bus to ensure that no property or students remained on the bus.

vii.    After checking to make sure the bus was empty, the driver was supposed to place a marker in the windshield of the bus confirming that the bus driver had checked the bus and that is was indeed

Page 14      **THIRD AMENDED COMPLAINT**

empty.  Then the driver could close up the bus, exit it, and leave it

parked.

    viii.    The windshield of each bus was supposed to be checked by

another transportation department staff member as the driver exited

to make sure that each bus driver had placed the marker in the

window confirming that the bus had been checked and that no

children or property were left inside.

e.    On information and belief, the District is aware of the best practices for

bus transportation practices and policies and made a deliberate and

indifferent decision relative to the procedures and practices adopted and

promulgated including those described above which caused the

deprivation of M.D.'s constitutional rights.

f.    On information and belief, the District's failure to adopt certain policies

relative to transportation reflect a deliberate or conscious choice relative to

transportation policies and procedures that failed to protect M.D's

constitutional rights, including but not limited to:

    i.    The bus drivers were the only adults on the bus.

    ii.    The bus route sheets were confusing to bus drivers.  The failure to

revise the routes demonstrates a deliberate indifference and

reckless disregard for M.D.'s constitutional rights.

    iii.    There is no system to ensure bus drivers follow and complete

routes.

Page 15    **THIRD AMENDED COMPLAINT**

iv.     There is no verification system to ensure bus drivers properly check their bus after it is parked in the bus barn.

g.     The District's failure to supervise its bus drivers, including defendant Russell, constitutes deliberate indifference to the rights and safety of students, including M.D.

h.     The District directly participated in the deprivation of M.D.'s constitutional rights by requiring defendant Russell to come work when she was sick and exposed children, including M.D., to illness.

i.     The District and Superintendent Schild were aware of other incidents and failed to address known safety concerns.  The District's failure to investigate, take remedial action and prevent repeat occurrences resulted in deliberate indifference to the rights and safety of students, including M.D.

j.     On information and belief, the District was also involved in budget and decisions that resulted in the implementation and execution of policies and procedures that caused the deprivation of M.D.'s constitutional rights.

**Defendant Randy Schild**

48.    Based on the above-described state and federal Early Childhood Special Education delivery system, defendant **Schild** is liable for the deprivation of plaintiff's federally protected rights because:

a.     Schild bears the ultimate responsibility to uncover problems in the school district and to ensure that such problems are corrected.

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

b.     In this case, defendant Schild knew or should have known that the school district did not participate in M.D.'s Individualized Program Team meetings.On information and belief, the School District had a practice of non-participation in such meetings.

c.     On information and belief, Defendant Schild knew that the school district had ineffective and unenforced procedures for ensuring school bus drivers followed their routes and that children were not left on district school buses.  He should have remedied both of these known shortcomings.

d.     On information and belief, Defendant Schild made deliberate decisions to *not* correct problems with district school bus routing procedures.

e.     On information and belief, Defendant Schild made deliberate decisions to *not* implement any of the available and known solutions to children being left on school buses.

f.     On information and belief, Defendant Schild made deliberate decisions to endanger students by requiring bus drivers to drive school buses when ill.

g.     On information and belief, defendant Schild knew of the national problem of children being left on school buses, as well as the specific problem of children being left on school buses in Tillamook School District.

h.     On information and belief, Defendant Schild knew that the likelihood of students being left on school buses can be reduced to zero through the use of additional adults on the bus, the installation of an inexpensive buzzer on a bus (as required by law in numerous states, most recently, California), or

Page 17        **THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

simply enforcing the procedures Tillamook School District already had in place. Defendant Schild took deliberate decisions to *not* implement any of these solutions.

    i.    Defendant Schild made conscious and deliberate decision regarding the promulgation of policies and procedures related to transportation, and the various alternatives that may have been instituted, such that it amounts to a policy of deliberate indifference to the constitutional rights of those affected.

### DANGER CREATING EXCEPTION

49.    Defendant District had an affirmative duty to protect M.D. under color of state law.

50.    Defendant District participated in a creating a dangerous situation as follows:

    a.    Failing to institute adequate policies and procedures relative to the transportation of students enrolled in the Early Childhood Special Education program such as MD;

    b.    Requiring the bus driver Russell to report to work despite calling in sick.

    c.    Failing to investigate, take remedial action and prevent repeated occurrences.

51.    Defendant acted with deliberate indifference, as described above, to the known or obvious danger to M.D. which lead to the deprivation of plaintiff's constitutional rights.

Page 18    **THIRD AMENDED COMPLAINT**

**FIRST CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 1983 – Liberty Interest Deprivation – Fourth Amendment**

**(As to M.D. Against Defendants Russell, Schild, and District)**

52.     Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 51, inclusive, as if they were fully set forth herein.

53.     Defendants, while acting under state law, violated M.D.'s rights under the Fourth Amendment to the United States Constitution by depriving her of liberty by causing M.D. to be confined, strapped in her seat on the District bus, alone and unsupervised, in the District bus barn, despite defendants' duty to timely deliver her to Head Start.

54.     The confinement of M.D. was intentional because defendants: (1) had knowledge that existing policies and procedures and/or lack of certain policies and procedures relative to the transportation of students to the Head Start program that posed a pervasive and unreasonable risk of constitutional injury to M.D.; (2) defendants failed to adequately respond to that knowledge so as to show a deliberate indifference to or tacit authorization of the deficit procedures and policies, and (3) because defendants failed to adequately respond, M.D. was subjected to unlawful confinement.

55.     Defendants' failure to address safety concerns and similar incidents that happen "4 or 5 times a year" constitute deliberate indifference to the rights and safety of children including M.D.

56.     Defendants' failure to investigate, take remedial action, and prevent repeat occurrences resulted in deliberate indifference to the rights and safety of students including M.D.

Page 19     **THIRD AMENDED COMPLAINT**

57.    Defendants' knowledge that defendant Russell was sick yet required her work constitute deliberate indifference and reckless disregard for the children's safety, including M.D.

58.    Defendant District's failure to supervise Russell and ensure she follows policies and procedures, including checking for the presence of persons prior to leaving the bus parked at the completion of her morning route and not placing the required marker inside the bus windshield, constitute deliberate indifference to the rights and safety of students, including M.D.

59.    Defendant District ratified constitutional violations through its officials with final policy making authority.

60.    As a result of the unlawful actions alleged herein, M.D. suffered and continues to suffer severe emotional distress, mental pain and anguish, and loss of enjoyment of life.  M.D. is entitled to non-economic compensatory damages sufficient to compensate for emotional pain and suffering, anxiety, embarrassment, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

61.    Defendants' acts were done with reckless indifference to the rights of M.D. and her parents and with reckless disregard to public health and safety.  Such conduct should not be tolerated by this society, and punitive damages in an amount found appropriate by a jury, and available under applicable law, should be assessed against defendants to punish defendants and deter such conduct in the future.

62.    Pozos Leon has hired legal counsel to prosecute the claims of M.D. and is entitled to an award of reasonable attorney fees and costs, and expert witness fees incurred herein.

**SECOND CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 1983 – Danger Creating Exception**

**THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

**(As to M.D. Against Defendant District)**

63.     Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 51, inclusive, as if they were fully set forth herein.

64.     Defendant, acting under color of state law, violated M.D.'s rights under the Due Process Clause to the Fourteenth Amendment to the U.S. Constitution by acting affirmatively with deliberate indifference in creating a foreseeable danger.

65.     Defendant District had an affirmative duty to protect M.D. under color of state law.

66.     Defendant participated in a creating a dangerous situation as follows:

      a.     Failing to institute adequate policies and procedures relative to the transportation of students enrolled in the Early Childhood Special Education program such as MD;

      b.     Requiring the bus driver Russell to report to work despite calling in sick.

      c.     Failing to investigate, take remedial action and prevent repeated occurrences.

67.     Defendant acted with deliberate indifference, as described above, to the known or obvious danger to M.D. which lead to the deprivation of plaintiff's constitutional rights.

68.     As a result of the unlawful actions alleged herein, M.D. suffered and continues to suffer severe emotional distress, mental pain and anguish, and loss of enjoyment of life.  M.D. is entitled to non-economic compensatory damages sufficient to compensate for emotional pain and suffering, anxiety, embarrassment, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

**THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

69.     As a result of the unlawful actions alleged herein, M.D. has suffered economic damages, medical, therapy, and other expenses; M.D. and her parents are entitled to recover of such damages in an amount to be proven at trial plus interest.

70.     Defendants' acts were done with reckless indifference to the rights of M.D. and her parents and with reckless disregard to public health and safety.  Such conduct should not be tolerated by this society, and punitive damages in an amount found appropriate by a jury, and available under applicable law, should be assessed against defendants to punish defendants and deter such conduct in the future.

71.     Pozos Leon has hired legal counsel to prosecute the claims of M.D. and is entitled to an award of reasonable attorney fees and costs, and expert witness fees incurred herein.

### THIRD CLAIM FOR RELIEF

### Negligence

### (As to M.D. Against All Defendants)

72.     Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 51 inclusive, as if they were fully set forth herein.

73.     Defendants' actions were negligent in that:

a.      A special relationship existed between the plaintiff and defendants, and defendants therefore owed plaintiff a duty to protect plaintiff from the above-stated, foreseeable injuries and damages.  Defendants failed to fulfill said duty.

b.      Defendants knew or should have known that students such as M.D., a 4-year-old child with disabilities, and in M.D.'s situation, strapped into their

Page 22     **THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

seats on buses, foreseeably would experience the types of physical and

emotional injuries and damages suffered by M.D. if placed on a school bus

without sufficient adult supervision, without the driver being provided

effective procedures for following her route, and without sufficient

procedures in place to verify the driver at least follow the minimal

procedures that were in place.

74.    The following actions by defendant Russell were negligent:

a.    Forgetting about M.D. on the bus and failing to drop her off at Head Start;

b.    Leaving M.D. alone, confined inside the bus, strapped into a car seat, asleep and unsupervised in the bus barn;

c.    Failing to follow District procedures to check the entire bus for cleanliness and the presence of persons or belongings prior to leaving the bus parked at the completion of her morning route;

d.    Failure to follow District procedures to leave a marker inside the windshield of the bus to enable verification from outside of the bus that the bus driver had indeed made the required check of the bus.

75.    As Russell's employer, defendant Tillamook County School District is vicariously liable for her negligent actions.

76.    Defendants are also liable for negligent infliction of emotional distress in that M.D. suffered emotional injuries as a direct and proximate result of defendants' negligence; defendants' negligence stems in part from a special relationship; and defendants' actions also infringe on plaintiff's legally protected, civil and constitutional rights.

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

77.     As a result of the unlawful actions alleged herein, M.D. suffered and continue to suffer severe emotional distress, mental pain and anguish, and loss of enjoyment of life.  M.D. is entitled to non-economic compensatory damages sufficient to compensate for emotional pain and suffering, anxiety, embarrassment, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

78.     As a result of the unlawful actions alleged herein, Pozos Leon, on behalf of M.D., has incurred economic damages for medical care and treatment, therapy, and other expenses due to physical and emotional harm, and will continue to incur additional economic damages for future medical care and treatment; Pozos Leon, on behalf of M.D., are entitled to recover of such damages in an amount to be proven at trial plus interest.

79.     Defendants' acts were done with reckless indifference to the rights of M.D. and her parents and with reckless disregard to public health and safety.  Such conduct should not be tolerated by this society, and punitive damages in an amount found appropriate by a jury, and available under applicable law, should be assessed against defendants to punish defendants and deter such conduct in the future.

80.     Pozos Leon has hired legal counsel to prosecute the claims of M.D. and is entitled to an award of reasonable attorney fees and costs, and expert witness fees incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1.     Assume jurisdiction over each of the causes set forth herein.

2.     Regarding staffing on school buses:

Page 24     **THIRD AMENDED COMPLAINT**

**Rohny Law**
1212 SE Spokane Street
Portland, OR 97202
Tel. 503.206.8595

     a.     Grant a permanent injunction enjoining defendants from continuing to operate school buses for students in Head Start and students with disabilities in the absence of one additional adult employee on each route, in addition to the bus driver, to attend to the students on the bus while the driver attends to the driving and route; and

     b.     Order defendants to carry out and institute policies, practices, and programs providing for such additional adult staffing on all of defendants' bus routes for students in Head Start and students with disabilities.

3.     Regarding procedural safeguards for school buses:

     a.     Grant a permanent injunction enjoining defendants from continuing to operate school buses without sufficient and effective procedural safeguards to ensure that the driver makes all stops on the driver's route; that the bus is in fact empty of persons when the bus driver parks the bus at the end of the route; and that supervisors verify that all drivers follow all applicable procedures; and

     b.     Order defendants to carry out and institute policies, practices, and programs providing for such procedural safeguards.

4.     Order defendants to carry out and institute policies, practices, and programs providing for notification of parents within 15 minutes when students do not arrive at the scheduled time at Head Start.

Page 25     **THIRD AMENDED COMPLAINT**

5.      Order defendants to make plaintiff whole by compensating plaintiff for past and future economic damages and pecuniary losses and such other losses as are awarded by a jury or otherwise established at trial.

6.      Order defendants to pay plaintiff awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in an amount to be determined by a jury.

7.      Order defendants to assess an award of punitive damages against the defendants in an amount to be determined by a jury.

8.      Award plaintiff her costs of suit and her reasonable attorney fees, costs, and expert witness fees pursuant to 42 U.S.C. § 1988.

9.      Order defendants to pay prejudgment and post judgment interest, as appropriate, on all amounts due to plaintiff as a result of this action.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

DATED: 25th day of May, 2018.

**CHARESE ROHNY LAW OFFICE, LLC**

*/s/ Charese A. Rohny*
By:_____
        Charese A. Rohny, OSB 953964
        Of Attorneys for Plaintiff

Page 26        **THIRD AMENDED COMPLAINT**